SMITH *et al. v.* DAVIS.

*(Circuit Court, N. D. Illinois, S. D.* April 23, 1888.)

1. PATENTS FOR INVENTIONS—PATENTABILITY—PRIOR USE.

In support of prior use set up as a defense to a bill for infringement of letters patent No. 371,524, of October 11, 1887, to Elias Smith, for an induction coil, whereby a current of electricity may be used with advantage to deaden the pain caused by dental operations, defendant showed that one Grimes, a dentist, had in 1859 taken a galvanic battery and attached to it a third wire which in turn he attached to the operating instrument, and that the apparatus was successfully worked to prevent pain in dental operations in the same manner as in the Smith patent. He used the apparatus for about a year, and then abandoned it until August, 1887, when he took it up again after the Smith machine had gone into use. The only witness to this effect was Grimes himself, and he was unable to produce his apparatus. It was also shown that Grimes had copied bodily the certificates contained in Smith's circulars as to the value and usefulness of that patent, and had used them to advertise the machines made by himself in 1887. *Held,* that the evidence failed to establish prior use.

2. SAME.

Defendant also showed by one Froeckman that he, F., had made batteries with three wires, similar to those of Smith, as early as 1873, and that batteries of his make had been used about that time in a dime museum in St. Louis, and on the streets of that city by one James or Jacques, a sort of street fakir, to cure toothache, earache, neuralgia, etc. The battery was, however, not produced, although it was shown to be in the possession of Jacques' widow, in St. Louis, and the case was tried in Peoria, Ill. The widow also testified that the battery had but two wires, and in this she was corroborated by two other witnesses. *Held,* that the evidence did not establish prior use.

In Equity. Bill for infringement.

*H. W. Wells,* for complainants.

*C. N. Mihegan,* for respondent.

BLODGETT, J. In this case defendant is charged with the infringement of patent No. 371,524, granted October 11, 1887, to Elias Smith, assignor of one-half to Fred. Kimble, for an induction coil. The purpose of the invention, as stated in the specifications, is to produce means whereby a current of electricity may be used with advantage to deaden the pain caused by dental operations. The apparatus, described at length in the specifications and drawings, consists of a galvanic battery, with two jars and provision for raising and lowering the cells into the jars, with wires leading from the cells to the poles, and from the poles are insulated wires terminating in electrodes, which are to be taken in the hands of the patient. The current from the positive pole is divided, and a third wire is taken from this pole and attached to the forceps or other instrument with which the dental operation is to be performed, and, when in use, the cells are dropped, by a device shown, into the liquid, so as to create the galvanic current. The patient takes the two electrodes, one in each hand, while the operator applies the forceps, or other instrument, to which the third wire is attached, to the tooth or other part upon which the operation is to be performed; the effect being, as is claimed, to deaden the nerves to such an extent as to make

the operation substantially painless. The patent contains seven claims, but infringement is only charged in this case of the fourth claim, which is in the following words: "(4) In an electrical apparatus for dental purposes, a generator, an induction coil, the electrodes, and the wire from one of the discharge posts connected with a pair of forceps or the like, substantially as described." There are several other features in the patent, upon which no infringement is charged in this case. The defendant, upon the hearing, substantially admitted the infringement of this fourth claim of the complainants' patent; that is, the defendant uses an electrical or galvanic apparatus organized for the purpose of use by dentists to deaden or prevent pain, with two electrodes to be held in the hands of the patient, and a third wire to be attached to the forceps or instrument in the hands of the operator; so that we have a machine organized for the same purpose, and operating in substantially the same manner, as is shown in the complainants' patent.

The defense interposed is prior use—*First*, by F. T. Grimes, in 1859, at Liberty, Mo.; *second*, the manufacture of a similar battery by E. A. Froeckman, who testifies that he made such batteries as early as 1873, with three wires, to be used for the purpose of alleviating pain. The only question is whether such prior use is sufficiently established to defeat this patent.

Dr. Grimes testifies in substance that in 1859 he was a dentist at Liberty, Mo., and that he borrowed from the college at that place a galvanic battery, to which he attached a third wire to be attached to the forceps or other dental instrument, and that he used this battery, organized and arranged as stated, for the purpose of preventing pain in the extraction of teeth and other dental operations for about one year thereafter, and that it was successful, and operated to prevent pain in such operations in the same manner as does the complainants' machine. The testimony of this witness seems to me wholly improbable. I can hardly believe it possible that a man, nearly 30 years ago, could have discovered a mode of preventing pain in dental and surgical operations, so effective as the proof shows this method to be, and had brought it into successful use for a year or thereabouts, and then to have abandoned it wholly, and not resumed its use until about 1886 or 1887. The story seems to me so improbable that it should require strong corroboration to induce belief. This witness in his direct examination not only testifies to the use of this battery in 1859 by him for dental purposes, but also testifies that he made another battery in 1886, of the same character; but upon cross-examination it very clearly appears that he did not make the last battery until some time in August, 1887, and after the complainants' battery had gone into use, and after he, the witness, had seen the circulars and the description thereof, if he had not seen the complainants' battery. It also appears from the proof that this witness entered upon the manufacture of this kind of batteries; and, for the purpose of giving currency and publicity and making a proper impression upon the public mind to secure sales, he copied bodily the certificates which were contained in complainants' circular in regard to the value and usefulness of the com-

plainants' machine. This unconscionable act on the part of this witness goes far, in my estimation, to create doubts as to his integrity, and, of course, operates to throw doubt upon his truthfulness. If such a machine as he says he made in 1859 was in fact made at Liberty, Mo., and if he successfully performed dental operations with it, it would seem at least not improbable that he could produce the witnesses, if he could not produce the machine with which he claims to have made such a success. It is hardly possible that a patient whose teeth were extracted without pain by the use of a galvanic battery by this witness would have forgotten the circumstance; and, if there was any extensive use, some, if not many, such patients could be produced to testify to the fact. Standing alone, this witness' testimony, therefore, it seems to me, is not sufficient to establish such prior use as should defeat this patent.

The testimony of the witness Froeckman is, in substance, that he made such batteries,—that is, batteries that had three wires, one of which was adapted to be attached to the surgical instrument with which the operation was to be performed,—as early as 1873, but he produced no batteries of that character, and the defendant does not produce any such battery. He testifies, however, that he made one of these batteries as early as 1873, and made others afterwards for one Leon James or Jacques,—the man seems to have been known by both these appellations,—which James used, from the time he so made it, for the purpose of curing toothache, earache, headache, neuralgia, etc., at the dime museum in St. Louis, and upon the streets in that city, as a sort of street fakir, and testifies that this battery had the divided current and third wire of the complainants' battery.

The complainants' rebutting proof shows that this battery, or one of the batteries—and probably the last one—which this witness made for James, is still in existence in the possession of James' widow in St. Louis, and yet the battery is not produced, but Mrs. James states that it has only two wires. She says it had six posts, which Froeckman says were all poles of the battery; yet she states emphatically and positively that only two of those posts were used in applying the battery by her husband; and this statement is corroborated by the witnesses Kline and Stahl. The failure of the defendant to produce this Froeckman machine, although the proof shows that it is accessible, casts a doubt upon the testimony of Froeckman as to its organization.

The rule is well settled that where a defendant seeks to defeat a patent by showing prior use, such prior use must be established beyond a reasonable doubt. As was said in *Thayer* v. *Spaulding*, 27 Fed. Rep. 66: "Parties asserting the prior use of a device covered by a patent have the burden of proof, and are bound to establish such prior use by strong and convincing, if not absolutely conclusive, proof." And in *Coffin* v. *Ogden*, 18 Wall. 120, Mr. Justice SWAYNE said:

"The invention or discovery relied upon as a defense must have been complete, and must have been capable of producing results sought; that is, the defendant must show beyond a reasonable doubt that the devices or discoveries which are set up to defeat the patent were not only similar to the improv-

ments described in the patent, but that they produced the results which were accomplished by the devices covered by the patent."

In *Mattress Co.* v. *Bed Co.*, 8 Fed. Rep. 87, the defense of prior use was interposed. Defendant relied upon the evidence of one Pohl to defeat the patent. He testified that he made, in Baltimore, in 1865, five iron frames, describing them. The court said:

"None of these bed bottoms are produced; they probably cannot be found. The testimony of Pohl stands alone; that is, the unsupported oral testimony of a person in regard to the way in which a few frames were made fifteen years ago. This is not sufficient to overcome the presumption which belongs to the patent."

And the same rule was applied in *Manufacturing Co.* v. *Haish*, 4 Fed. Rep. 900; *Doubleday* v. *Beatty*, 11 Fed. Rep. 729; *Campbell* v. *New York*, 9 Fed. Rep. 500. Tested by these rules, this testimony falls far short of being so convincing and satisfactory as to establish in my mind the fact of the prior use of this device as alleged by the defendant.

That batteries were constructed and used for the avowed purpose of allaying pain or preventing pain in dental operations long prior to the complainants' invention is undoubtedly true from the exhibits from the patent-office put in evidence in this case, but all these devices show the use of a two-wire battery, and, so far as the proof in this case goes, there is no evidence that a third wire battery or divided current was used until it was invented by the complainant Smith, except the testimony of the defendant's witnesses; and I do not think it probable that a change which the proof shows is so marked between the old two-wire and the three-wire machines could have been made as testified to by the witnesses Grimes and Froeckman without its becoming a matter of such public notoriety that their testimony could be easily corroborated. It will be noticed that neither of these witnesses corroborate the other. The prior use in 1859, testified to by Grimes, is nowhere corroborated; and the prior use by Froeckman, instead of being corroborated, is contradicted.

I am therefore of the opinion that the defense of prior use is not established, and that the complainants are entitled to a decree for an injunction and an accounting.