## THE CEDARHURST.

### THE TROJAN.

#### Nos. 197, 198.

Circuit Court of Appeals, Second Circuit.

May 12, 1930.

Crowell & Rouse, of New York City (E. Curtis Rouse, of New York City, of counsel), for Steamer Freeport Corporation, claimant-appellant and cross-libelant appellant.

Macklin, Brown, Lenahan & Speer, of New York City (J. Dudley Eggleston, of New York City, of counsel), for Hudson River Navigation Co., libelant-appellee and cross-claimant appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The Cedarhurst, a molasses tanker of 5,-030 tons gross register and heavily loaded, was proceeding up the Hudson river. She was followed by the Albany night boat Trojan, a side-wheel steamer of 2,571 tons gross

register. The Trojan was running at a speed of about 12 knots per hour on a customary set course of north by west 18 west from a point a little below Haverstraw to a point about 700 or 800 feet off Stony Point, where a change of course to north three-fourths west was to be made. The Cedarhurst was proceeding at a speed of about 6 knots an hour on a course north three-fourths west.

The Trojan when not more than a quarter of a mile from the Cedarhurst blew a passing signal of one whistle, and the latter answered it by a like signal. The witnesses for the Trojan said the vessels were at this time on parallel courses spaced about 275 feet apart, and that they continued on these courses until the Trojan overlapped the Cedarhurst on her starboard side, whereupon the Cedarhurst suddenly sheered toward the Trojan and the two vessels collided. The witnesses for the Cedarhurst, on the other hand, said that, after passing signals were exchanged, the Trojan in attempting to go by the Cedarhurst crowded too close on her and finally sheered into her. Each vessel claimed that she was running on a steady course and that the other vessel sheered into her.

A libel was filed by Hudson River Navigation Company to recover damages against the Cedarhurst for the collision and a cross-libel by Steamer Freeport Corporation to recover damages against the Trojan. The trial judge found that the Cedarhurst suddenly, and without excuse, sheered into the Trojan at an angle of about 15°, when the latter was properly navigating on a course practically parallel to that of the Cedarhurst and from 200 to 275 feet therefrom. He accordingly granted an interlocutory decree to the Trojan against the Cedarhurst and dismissed the cross-libel filed on behalf of the latter. From the resulting decrees, this appeal is taken.

The trial judge rested his findings chiefly upon the testimony of Veghte, a passenger on the Trojan, and Gritmon, master of the tug Bavier, who were apparently disinterested witnesses, and Warner, the master of the Trojan, whose testimony impressed him favorably.

Veghte was looking out of the window of his stateroom, which was on the port side of the Trojan; he heard the exchange of whistles and felt the severe impact of the collision. He said, in respect to the Cedarhurst: "I continued to watch this boat until it proceeded to come directly towards the Trojan. * * *" When asked whether he

saw the Cedarhurst change her course, he said: "Well that I couldn't say, I think according to landmarks, it was a clear night, she changed her position somewhat. * * * Toward the Trojan." He was asked whether he observed any alteration in the course of the Trojan, and replied: "I couldn't say positively."

It seems manifest that such testimony offered as proof of sudden sheering by the Cedarhurst is of but the slightest weight. Veghte not only was not shown to have been a person competent accurately to observe the things he attempted to describe, but he even admitted that he could not say positively whether there was any alteration in the course of the Trojan, and added on cross-examination: "I wasn't watching for any." How any person, least of all a passenger, presumptively unfamiliar with maritime affairs, could determine that a colliding vessel had changed her course when he did not know whether the vessel he was on changed hers is hard to see. But Veghte's testimony is especially valueless when he has in so many words disclaimed observing any alteration in the course of either ship. It is usual, if not inevitable, for one who does not notice the course of his own vessel to say that a vessel with which she collided steered into her. But, where his observation is as limited as here, his impressions afford little proof of the correctness of his conclusions.

Gritmon's testimony likewise is of slight weight. The tug Bavier, of which he was master, was 600 feet to the west of the Cedarhurst and somewhat to the north. As soon as the Trojan overlapped the Cedarhurst, the former was more or less hidden by the Cedarhurst from Gritmon's observation and not until the Trojan had overlapped did he say that the sheer began. When off at one side, he was in no position to judge accurately of the course of either vessel, and his statement that, when he came up to the Cedarhurst after the collision, he saw that the water in the river was muddy, throws doubt upon his reliability as a witness, for there is not a particle of testimony that the Cedarhurst ever went aground.

Warner, the master of the Trojan, was in his room at the time of the collision, and did not go on deck until he felt the jar. He did look out of the window when he heard the exchange of signals and thought that the courses of the two vessels lay about 275 feet apart and were parallel and that the Trojan was then about this same distance behind

the Cedarhurst. He did not see the collision, and could not testify that the Cedarhurst sheered.

The pilot and the quartermaster of the Trojan said that, when she was running on a course 275 feet to the east of the Cedarhurst and had already lapped her, the latter vessel suddenly sheered into the Trojan.

The testimony of various eyewitnesses, when supporting the conclusions of an experienced trial judge, would not ordinarily be reviewed by us. But the claim that a vessel running on a course parallel with that of another, and spaced 275 feet from the course of the latter, suddenly sheered into her, requires weightier proof than we find in this case. We more readily reach this conclusion, when the trial judge said in his opinion that he was unable definitely to ascertain the reason for the sheer. He thought it likely that a wrong order may have been given to the helmsman, but felt it was enough to base the liability of the Cedarhurst upon a sheer, whether explicable or not. He said: "It is sufficient to have found that the cause of the collision was the sheer of the Cedarhurst." To us the inherent improbabilities of the proof of this sheer are so great as to destroy its probative force.

It is much more reasonable to suppose that the vessels collided because they were on converging courses than that the Cedarhurst, without any assignable cause, suddenly sheered into the Trojan. The northwest one-eighth west course of the Trojan was a more westerly course than the north three-fourth west course of the Cedarhurst, and was bound to intersect the former. Reeve, the well-known expert, who testified for the Cedarhurst, showed in Exhibit H that the courses of the two vessels, on the assumption that they were true magnetic (an assumption nowhere contradicted by evidence) would converge near the place of actual collision.

While some deviation of the compass of each ship may have existed, it may have been insignificant, or the deviations may have been substantially identical on the two compasses. If the compass on the Trojan had a deviation which sent her heading further to westward, she would converge on the Cedarhurst more than the magnetic bearings indicated, and, if it had one that set her heading further east, her course would have brought her very near to the easterly bank of the river and into shallow water before she reached the place at which she would ordinarily change her bearing. There seems every reason to believe that the courses (magnetic)

plotted by Reeve on Exhibits C and H were very close to those actually run by the two steamers, for the collision was where it would have occurred if such had been the case. It is therefore reasonable to suppose that converging courses rather than a sudden sheering of the Cedarhurst occasioned all the trouble.

There is further disproof of the theory that the Cedarhurst sheered into the Trojan. Reeve demonstrated that if, as claimed by the Trojan's witnesses, the Trojan was running at a speed of 12 knots and the Cedarhurst of 6 knots, on substantially parallel courses 275 feet apart, and the Cedarhurst, when the Trojan overlapped her, suddenly hard-a-ported so as to cross the course of the Trojan at an angle of 45°, the latter vessel would have passed beyond the Cedarhurst and out of her way before the Cedarhurst got across to the course of the Trojan. Irrespective of his testimony, it is quite apparent that any calculation made on the assumption that the courses were substantially parallel and lay 275 feet apart just before or while the Trojan lapped the Cedarhurst, necessitates the conclusion that a collision, particularly the one which occurred forward of the Trojan's beam, was impossible.

It is thus evident from the Trojan's own story that the Cedarhurst could not have ported into her when running on a course substantially parallel and 275 feet to the east and that when the Trojan began to overlap the Cedarhurst the vessels must have been much nearer together than the witnesses for the Trojan said was the case.

Vaughan, who was steering the Cedarhurst when the collision occurred, said that the Trojan seemed to be coming rapidly up the river and swinging toward the Cedarhurst all the time. De Lein, the chief officer of the Cedarhurst, said that the Trojan crowded too close on his vessel, and, when she was passing within a distance of only 50 or 60 feet, suddenly sheered into the Cedarhurst. Much the same story of crowding came from Percy, the river pilot of the Cedarhurst. It seems reasonably clear that the collision was either because of the actual convergence of the courses or because the courses taken brought the vessels so very near together that a suction was set up that pulled the Cedarhurst into the Trojan. If the story of the Cedarhurst witnesses be true, she was on a steady course and the Trojan, either because her set course converged on that of the Cedarhurst, or for some other reason, crowded on the latter vessel. The general aspects of the

situation make the version of the Cedarhurst much more reasonable than that of the Trojan.

The Trojan was the overtaking vessel, and, under article 24 of the Pilot Rules, was bound to keep out of the way of the Cedarhurst. When the latter acceded to the passing signal, she assumed no responsibility for the Trojan's maneuver, and was under no obligation except to refrain from interference with the Trojan and to hold her course and speed so far as practicable. Warner Co. v. Independent Pier Co., 278 U. S. 85, 49 S. Ct. 45, 73 L. Ed. 195.

There was plenty of water on the starboard side of the Cedarhurst within which the Trojan might navigate, but, in spite of this, she crowded down on the Cedarhurst, either because of persistence in running on her usual set course irrespective of what was ahead, or because, through mere carelessness, she chose to pass nearer to the Cedarhurst than was prudent. Reeve testified that a passage by the Trojan within 50 or 60 feet of the Cedarhurst at a speed of 12 knots would set up a suction tending to bring the stems of the vessels together. But whether too close shaving or suction brought about the casualty, the Trojan was bound to keep out of the way of the overtaken vessel. In our opinion the collision arose because of her failure to do this rather than because of a sudden sheer by a heavily laden ship like the Cedarhurst such as the Trojan witnesses describe. The Trojan had no lookout and the pilot and quartermaster who were in the pilothouse observed nothing until, as they said, the Cedarhurst suddenly began to sheer when close beside them. If the story of the abrupt sheer were credible perhaps a lookout would have served no purpose, but if, as we hold, the collision arose from crowding on the course of an overtaken vessel, a vigilant lookout might well have saved the day.

In our opinion, the collision was not due to any sheer or other fault of the Cedarhurst. The Trojan neglected to keep out of the way of the Cedarhurst and to maintain a proper lookout. She ran at a high speed far too close to the vessel she was attempting to pass.

The interlocutory decree of the Hudson River Navigation Company is reversed, and the libel is dismissed. The decree dismissing the cross-libel of Steamer Freeport Corporation is reversed, and an interlocutory decree is granted to it with the usual reference to report on damages. Costs are to go to Steamer Freeport Corporation.