## UNITED STATES v. ANDERSON CO.
### No. 7475.

Circuit Court of Appeals, Seventh Circuit.
March 17, 1941.

Rehearing Denied May 22, 1941.

James R. Fleming, of Fort Wayne, Ind., Luther M. Swygert, of Hammond, Ind., and Samuel O. Clark, Jr., Asst. Atty. Gen., for appellant.

Albert H. Gavit and Richard Melvin, both of Gary, Ind., for appellee.

Before EVANS and KERNER, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

An undistributed profits tax of $32,160.-95 for the years 1936 and 1937, was disallowed by the District Court on the ground that appellee was not subject to the tax, because it was both "insolvent and in receivership." Our only question involves the correctness of the court's finding (or conclusion) that appellee was "insolvent" within the meaning of the statute for each of the tax years involved.

The Facts. The Company's receivership began in September, 1932, and ended No-

344

vember 26, 1938. The annual balance sheets for the years 1936 and 1937 and the monthly profit and loss statements for this period supply important, if not controlling, evidence on the vital issue of solvency.

The following statement is taken from appellee's income tax return:

*ceivership in any court of the* United States * * *."

The Regulations (94) under this act provided (art. 14-1):

"A domestic corporation is not subject to the surtax * * * if * * * it is insolvent and in receivership * * *."

| | Beginning of 1936 | End of 1936 | End of 1937 |
|---|---|---|---|
| *Assets:* | | | |
| 1. Cash | $ 19,453.72 | $ 18,003.23 | $ 33,401.49 |
| 2. Notes receivable | 291.58 | 47,873.53 | 23,799.06 |
| 3. Accounts receivable | 65,024.47 | 75,411.24 | 163,603.62* |
| 4. Inventories | 32,247.32 | 127,368.90 | 160,028.59 |
| 7. Deferred charges | 1,743.87 | 13,364.76 | 26,874.82 |
| 8. Capital assets | 46,959.53 | 79,894.18 | 118,957.40 |
| 9. Patents and trademarks | 250,223.65 | 257,442.84 | 260,682.99 |
| 11. Other assets | 49,642.89 | 9,366.39 | 1,421.66 |
| | | (other inventories) | 701.00 |
| Total | 465,587.03 | 628,725.07 | 784,021.26 |
| *Liabilities:* | | | |
| 13. Notes payable | | 41,557.80 | |
| Bonds, notes, and mortgages payable (with original maturity of less than 1 year) | | | 129,928.28 |
| 14. Accounts payable | 3,731.61 | 59,989.15 | 50,975.79 |
| 15. Obligations of the Anderson Co. | 65,596.63 | 65,314.57 | 49,186.32 |
| Sight draft outstanding | 11,382.17 | | |
| Reserve for sales promotion | | 10,598.55 | (62.18)** |
| Accrued Expenses (receivership, interest, taxes) | 37,236.43 | 48,742.57 | 11,645.48 |
| Reserve for receivership expense | | | 21,062.18 |
| Due to customers, royalties, deferred income | 60,130.91 | 42,938.32 | 46,980.93 |
| Capital Stock | 185,941.55 | 185,940.55 | 186,641.55 |
| Earned surplus and undivided profits | 101,567.73 | 173,643.56 | 287,600.73 |
| Total | 465,587.03 | 628,725.07 | 784,021.26 |

The Revenue Act of 1936, Section 14 (surtax on undistributed profits), provides in subsection (d), 26 U.S.C.A. Int.Rev.Acts, page 824, for an exemption from surtax as follows:

"The following corporations shall not be subject to the surtax imposed by this section: * * * Domestic corporations *which for any portion of the taxable year* are in bankruptcy under the laws of the United States, *or are insolvent and in re-*

The Regulations, under the Act of 1938, provided (Art. 13-4):

"The term 'insolvent' means insolvency in the sense of excess of liabilities over assets and in the sense of inability to meet obligations as they mature."

The Regulations, under the Act of 1940, provided:

"The term 'insolvent' means insolvency either in the sense of excess liabilities over

---

* $5,449.37 reserve for bad debts should be added.

** Included in the reserve for receivership expenses.

assets or in the sense of inability to meet obligations as they mature."

■ We accept appellee's construction of the statute,—namely, (a) no tax is due if the taxpaying corporation in receivership "is insolvent for one day of said taxable year" and (b) insolvency is established if liabilities exceed assets, *or* if debtor corporation is unable to meet its obligations.

Appellant also accepts this view of the statute and argues, on this assumption, that taxpayer was not insolvent.

There is no question but that during the years 1936 and 1937 appellee's assets were well in excess of its liabilities. In the year 1937, they were greatly in excess of liabilities. It follows, therefore, that if the Company were insolvent in either of these years, it was because of its inability to meet its obligations as they matured.

This test in some cases is difficult to apply. The Federal Courts must give their own construction to Federal Tax Acts. Morgan v. Commissioner, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585. In other words, it does not simplify our inquiry to say, as was stated in Chicago & S. E. Railway Co. v. Kenney, 159 Ind. 72, 80, 62 N.E. 26, 28:

"Insolvency is the state of a person who is unable to pay his debts as they fall due in the usual course of trade or business. * * * An excess of assets over liabilities does not of itself render the debtor solvent."

The practical question is—Under what circumstances may a court say that a corporation is unable to pay its debts as they fall due in the usual course of trade or business?

■ In the year 1932 and the early part of 1933 few corporations could have borrowed money necessary to pay their debts, or any part of them, if any they had, that were due. Moreover, it is hardly believable that Congress intended to ascribe insolvency to a debtor who could meet its obligations with the use of its credit. If this were so, then every debtor corporation must have sufficient cash, or readily convertible assets, on hand, at all times, to meet its debts; otherwise it is insolvent.

Assuming as we do that the term "ability to pay one's debts" calls for a practical application and permits the debtor to use its credit, to secure cash, to pay its debts as they fall due, we find from an examination of appellee's balances and profits sheets, that when the receiver was appointed in 1932, the Company's matured debts were $158,461.91. The debtor was not able to meet its obligations. It was then insolvent. However, in 1936, the Company's taxable income was $87,614.52 and in 1937, its taxable profits were $111,669.18.

By the end of 1937, the indebtedness was down to $49,186.72. Between 1931 and September, 1938, 85% of all claims were paid. In 1937, the Company purchased much new equipment for the manufacture of new products and to carry on a large increase in its operations necessitated by the growth and the expansion of its business. It was prosperous. Its statements showed a thriving business. Had it not increased its capital and enlarged its plant, its debts could have been paid off by the end of 1936 or the fore part of '37.

During the years 1936 and 1937, there was not a month when the current assets did not largely exceed current liabilities. In many instances the ratio was two to one. In some instances the excess was as great as the entire indebtedness of appellee.

At the beginning of 1936 the total liabilities, which included obligations of $65,-596.63 for debts of the Company, and $37,-236.43 for accrued receivership expenses, and interest and taxes, and $60,000 due to customers and royalties and deferred income, were $187,000. Its assets were $465,-587.03. Its condition improved from that time until the end of 1937.

By the end of 1936 its obligations had increased to $279,000 and its assets to $629,-000. Still more favorable was the showing at the end of 1937 when its liabilities had increased to $310,000 and its assets to $784,-000. In other words, the earned surplus and undivided profits were $101,000 at the beginning of 1936 and at the end of 1937 they were $287,600. At the end of 1937 it had notes and bonds payable, but not due, of $130,000. On the other side of the ledger, it had accounts and inventories of $333,000.

A weakness in debtor's statement is the asset item of "patents and trade marks" which was carried at $250,000, $257,000, and $260,000 during the years 1936 and 1937. If this item of "patents and trade marks" was entirely eliminated, the assets still exceeded liabilities. Moreover, a large amount of the obligations outstanding in 1937 were not due.

346

Moneys had been borrowed and receiver's certificates were issued to pay for large capital expenditures.

In considering whether the debtor had borrowing capacity to meet such claims as might become due, we think it fair to look to the profit statement which showed 1936 earnings at $70,000, or approximately 38% of the capital. In 1937 it earned better than 60% of its invested capital. However, the year 1936 showed losses for the first three months of the year, followed by another loss in August, and thereafter substantial profits. On that showing its borrowing capacity was not as good in 1936 as in the succeeding year when a profit of $33,000 was shown in the first month and an impressive record continued throughout the year.

The three vital and puzzling questions are: (a) In determining whether appellee could meet its debt obligations as they matured, is the court permitted to consider the reasonable use of debtor corporation's credit? (b) To what extent must we accept the court's findings or are the findings not merely the court's conclusions as to the ultimate facts found from undisputed facts? (c) In determining solvency should the debts of the debtor corporation be limited to current obligations?

Our conclusions are:

(a) For the purpose of determining insolvency, when that status is asserted because of the debtor's inability to meet its obligations, the court should allow for the reasonable use of the debtor's credit. Coffman v. Maryland Pub. Co., 167 Md. 275, 173 A. 248, 252.

■ (b) Where the evidence upon which the finding of solvency depends consists of exhibits which are the debtor's income tax returns, its financial statements and balance sheets, the correctness of which is not in dispute, the finding of ultimate fact by the lower court (or by this court) is assailable either because it is a conclusion or because there is no substantial evidence to support it, assuming that the undisputed facts, disclosed in said reports, refute (in this court's opinion) the finding of the District Court.

There was some oral testimony in this case in addition to the income tax returns, the financial and balance sheet statements of the debtor, but such oral testimony referred largely to these exhibits and has little or no probative value on the questions before us.

■ Upon the facts in this case, this court cannot accept the findings which are but deductions of the District Court and which are contrary to the inferences deducible from the Company's reports. American Jurisprudence, Appeal and Error, Secs. 902, 905.

(c) It may be unnecessary in this case to determine whether the debtor's current obligations are the only ones to be included in determining solvency, for its debts, other than current obligations, were not due and none of them became due in 1937.

Applying our conclusions to the facts, we are convinced that defendant was not insolvent at any time in 1937. The different fact showing for 1936 necessitates our holding that the finding of the District Court for 1936 has evidentiary support.

The decree of the District Court is reversed with instructions to enter one in favor of the claimant in accordance with the views herein expressed.