**PFEIFER OIL TRANSP. CO., Inc., v. THE IRA S. BUSHEY et al.**

**THE PFEIFER No. 2.**

**THE MONITOR.**

No. 338.

Circuit Court of Appeals, Second Circuit.

July 8, 1942.

Foley & Martin and James A. Martin, all of New York City, (Christopher E. Heckman, of New York City, of counsel), for appellant.

Purdy & Lamb, of New York City (Edmund F. Lamb, of New York City, of counsel), for libellant-appellee.

Vincent A. Catoggio, Jr., of New York City, for impleaded respondent-appellee.

Before SWAN, CHASE, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This litigation arose out of a collision which occurred in Newark Bay on the night of March 2, 1941, between libellant's barge Pfeifer No. 2 and appellant's diesel tanker Ira S. Bushey. The story of the collision, as told in the libel, was as follows: The tug Monitor, having the barge, stern first, on her port side, was proceeding down Newark Bay on the starboard side of the dredged channel bound for Elizabethport.

When in the neighborhood of the New Jersey Central Railroad bridge she sighted the lights of a vessel which proved to be the Ira S. Bushey. This vessel was apparently rounding Bergen Point to head up the Newark Bay channel. After sounding two one-blast signals, to neither of which was there a response, the tug stopped and reversed her engines. Instead of straightening up after rounding Bergen Point the Ira S. Bushey headed at an angle toward the tug and, about the time the tug's engines were reversed, sounded a one-blast signal and swung sharply to starboard, with the result that she "came down sidewise across the barge," her port side striking the starboard stern (forward outside) corner of the barge.

The version of the facts given in the answer of the claimant of the Bushey was, of course, quite different: it asserted that the Bushey, bound from Brooklyn to Newark, rounded Bergen Point well over on her own starboard side of the channel and the collision was caused by the faulty navigation of the tug which first showed the Bushey her green light, then closed out the green and showed only her red, and, when close by, started to shut out her red light, whereupon the Bushey sounded a one-blast signal, rolled her wheel and swung out of the channel, but the tug continued on and brought the corner of the barge into collision with the port side of the Bushey.

Upon the trial the libellant submitted, pursuant to stipulation, the testimony of Ralph Zelno, bargee of the Pfeifer No. 2, taken before the Local Steamboat Inspectors shortly after the accident, put in evidence a copy of the survey of the damage, and then. rested. Without offering any further evidence the other parties also rested. From Zelno's deposition before the Local Inspectors the district court found that the collision occurred on the tug's starboard side of the channel; it exonerated the tug and barge and held the tanker solely at fault for having ignored, until too late, the tug's signals and having violated the narrow channel rule. 33 U.S.C.A. § 210. An interlocutory decree was entered against the tanker and her claimant and the petition impleading the tug was dismissed.

■ This appeal presents but one narrow issue, namely, whether the evidence is sufficient to prove fault on the part of the tanker and freedom from fault on the part of the tug. Since Zelno did not appear before the trial judge, his opportunity to appraise the bargee's testimony was no better than is ours. The Coastwise, 2 Cir., 68 F.2d 720, 721; The Africa Maru, 2 Cir., 54 F.2d 265, 266; The Ambridge, 4 Cir., 42 F. 2d 971, 976; Equitable Life Assur. Co. v. Irelan, 9 Cir., 123 F.2d 462, 464; Grove Laboratories v. Brewer & Co., 1 Cir., 103 F.2d 175, 178. We must, therefore, examine it to see whether the libellant made out a case.

Zelno testified that he was on the deck of his barge and after passing under the Jersey Central bridge he heard the tug sound a one-blast signal which it repeated about a half minute later. He then noticed the Bushey coming around Bergen Point. She had rounded the Point but not yet straightened up. It "looked to me as if he were going down to Elizabethport also. Then kept coming straight at us, and all of a sudden he seemed to bear to starboard, swing right across the stern of my barge. then he blew one. It's only a matter of seconds after that when the collision occurred." He testified that his vessel passed through the starboard draw of the railroad bridge and was navigating on the starboard side of the channel at the time of collision.

■ The appellant urges that Zelno's story as above outlined cannot be taken at face value because on cross examination it was brought out that he did not notice any buoys or markers, except the bell buoy at Bergen Point which he heard after the collision; that he could not say whether or not the tug altered course after passing through the starboard draw of the railroad bridge, and could not tell on which side of the channel the Bushey was navigating. But he explained that he could tell he was on the starboard side by the expanse of water between the barge and Texas docks which were on his port side, and he estimated the distance to be 600 or 650 feet. The court may take judicial notice of the official chart which was presented upon the argument. Krench v. United States, 6 Cir., 42 F.2d 354, 355; De Baker v. Southern California Ry. Co., 106 Cal. 257, 39 P. 610, 612, 46 Am.St.Rep. 237. According to the scale shown thereon 600 feet from the end of Texas docks would put the tug and tow to their starboard of the center line of the channel. There was no reason shown why the tug should not have continued on the same side after passing through the starboard draw and we think Zelno's estimate as to the distance of the Texas docks on his port hand justified the court in finding

608

that she was on her own side of the channel. This is a narrow channel. Zelno testified it was only 550 feet in width and the chart corroborates him. Consequently the approaching vessels were bound to comply with the narrow channel rule. 33 U.S.C.A. § 210. Zelno's testimony warranted the trial court in finding that the tug did so and the tanker did not. Accordingly the tanker was properly held at fault. Zelno's testimony does not show any navigational faults on the part of the tug. As in The Clara, 102 U.S. 200, 202, 26 L.Ed. 145, the maxim applies, Quod non apparet non est.

Decree affirmed.