## LUCKENBACH S. S. CO., Inc., v. UNITED STATES.

## THE S. S. MATHEW LUCKENBACH et al.

### No. 239, 20148.

Circuit Court of Appeals, Second Circuit.

July 26, 1946.

John F. X. McGohey, U. S. Atty., of New York City (Alfred T. Cluff, Sp. Asst. to Atty. Gen., of counsel), for appellant.

Burlingham, Veeder, Clark & Hupper, of New York City (Chauncey I. Clark, A. Howard Neely, and Charles E. Wythe, all of New York City, of counsel), for appellee.

Before L. HAND, SWAN and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This litigation concerns a collision at night on October 21, 1942 between two blacked out vessels in an east bound convoy. The convoy stations of the colliding steamships were in adjacent columns, the

Mathew Luckenbach being the fourth and last vessel in the third column (position No. 34) and the Zacapa being the third vessel in the fourth column (position No. 43). Ahead of the Luckenbach in position No. 33 was a tanker referred to in the testimony as the "whaler." Ahead of the Zacapa in position No. 42 was another tanker and following the Zacapa was the Esso Bayway in position No. 44. The distance between columns was 3,000 feet and between ships in the same column 1,200 feet. The convoy was on a course of 45° true and was proceeding at a speed of nine knots. The colliding vessels came together at almost a right angle, the bow of the Zacapa piercing the starboard quarter of the Luckenbach about thirty feet forward of her stern. It is obvious that one or both of the vessels must have been out of proper position in the convoy. The trial judge found that the collision occurred in the line of the fourth column; he held the Luckenbach at fault for being out of station and off course, and for failure to show lights and take any avoiding action when she discovered the Zacapa. The latter he held at fault for failing to maintain a competent lookout and failing to show lights or sound a signal to indicate a change of course when she attempted to avoid the Luckenbach. Upon this appeal each party claims that the other's vessel should have been held solely at fault.

The appeal presents only questions of fact. All the evidence was by deposition. Hence this court is as well able as the trial judge to appraise the credibility of the witnesses and draw inferences from their testimony. The judge discredited the Luckenbach's testimony that she was behind the whaler (No. 33) when the collision happened, and found that she had strayed into the line of the fourth column and her course was almost at right angles to the course of the convoy. We see no reason to doubt the correctness of this finding. During the watch which began at 4 a. m. the Luckenbach concededly fell behind. The watch officer discovered that her engines were turning only 47 revolutions instead of the 57 needed for the eight knot speed

which the convoy maintained up to 5 a. m. when it was increased to nine knots. At about 4:50 a. m. he called for 62 revolutions and five minutes later for full speed of 11½ to 12 knots. She ran at full speed for 30 minutes, which means that she covered about 6 miles while the convoy, at 9 knots, covered only 4½ miles. At 5:25 she reduced to half speed as she was then only 2½ to 3 cables behind a vessel which the watch officer identified as the whaler No. 33. She kept on at half speed for 8 minutes, then went to slow speed for 2 minutes, and at 5:35 stopped her engines because she was getting too close to the vessel ahead. A few seconds later a ship was seen on her starboard beam which proved to be the Zacapa. The collision occurred at 5:36 Luckenbach time. The inference that in trying to regain her station in the dark, after having fallen more than a mile behind, she passed the Esso Bayway and the Zacapa, angled over toward the fourth column and got behind the No. 42, mistakenly identifying her as the No. 33, is a far more probable explanation of the collision than the supposition she offers, namely, that the Zacapa got 90 degrees off the prescribed course and blundered into the third column. And this explanation is not only consistent with the Zacapa's testimony that she always followed No. 42 and kept the passenger ship No. 53 on her starboard beam, but also finds strong corroboration in the "statement" of the disinterested witness Zeuner,[1] chief officer of the Esso Bayway. He saw the Zacapa make a sudden turn to the right (evidently caused by imbedding her nose in the Luckenbach's starboard quarter) and he put his helm left to avoid her; he passed the Zacapa on his starboard hand, then straightened up and was in the fourth column and behind the No. 42. Zeuner's testimony alone is enough to support the finding as to the column in which the collision occurred. This being granted, the Luckenbach's failure to keep her proper convoy station and her blundering into the line of the fourth column and crossing the bow of the Zacapa are errors of navigation so serious as to charge her with liability regardless of any other faults she may have com-

---

[1] By stipulation Zeuner's statement was allowed in evidence with the same effect as if taken by deposition.

mitted. See The Norman Bridge, 2 Cir., 13 F.2d 435; The War Pointer, 4 Cir., 277 F. 718; The Hopemount, Adm.Div.1934, 75 Lloyd's List L.R. 94. Hence we need not consider the claims of other faults on her part.

The only fault with which the Zacapa can be charged is the failure of her lookout to discover the approaching Luckenbach sooner than he did. Her helm movements, her failure to indicate them by signal, and her failure to turn on lights, if faults at all, were committed in extremis—the time was too short after her first officer, Engwell, saw the funnel of the Luckenbach to avoid collision by any action he might have taken. The Zacapa had a seaman posted as lookout on the forecastle head. The judge found that he "was not vigilant because he failed to observe the 'Mathew Luckenbach' crossing the bow of the Zacapa which was well within the limits and angle of his vision." The lookout testified that he did not see the approaching vessel until he heard Engwell order the Zacapa's rudder hard right and that the Luckenbach was then about half way across his bow and "maybe 100 yards" distant. No doubt his estimate of the distance should not be accepted literally, but certainly she was no more (and probably less) than 1000 feet away, for the evidence justifies us in finding that the interval before collision was not more than one minute, the Zacapa had been advancing at a speed of nine knots, and the reversal of her engines simultaneously with her first helm movement could have had little effect upon her speed. The Luckenbach had reduced to half speed eleven minutes before the collision, went to slow speed three minutes before and stopped her engines one minute before; hence she was proceeding more slowly than the Zacapa and she approached at nearly a right angle to the Zacapa's course. Therefore she must have been forward of the beam and within the angle of vision of an alert lookout. She must also have been within the range of visibility for some period of time before the lookout sighted her, although it is impossible to say just how long. According to Zeuner's statement visibility was better than 500 yards, and most of the witnesses said that ships ahead could be seen at a considerably greater distance than Zeuner's estimate. It is difficult, therefore, to find any excuse for the lookout, if alert, not seeing the approaching vessel until she was half way across his bow. We do not think we should be justified on this record in reversing the judge's finding that the lookout "was not vigilant". See the British Resource, House of Lords, 1942, 73 Lloyd's List L.R. 143.

We reach this conclusion with regret. The Luckenbach's fault was far more egregious. This is a case where the Continental rule of comparative negligence would produce a more just result. But under the law of the United States division of damages was correct. Accordingly the decree is affirmed. Costs of the appeal are awarded to the appellant.