Richard **HUBBS**, Appellant,

v.

Juanita **LEACH**, et al., **Respondents**,

**Conservative Mortgage Company,
Defendant.**

Nos. C6–84–948, C5–84–1055.

Court of Appeals of Minnesota.

Oct. 2, 1984.

Vance B. Grannis, Thomas L. Grundhoefer, Grannis, Campbell, Farrell & Knutson, South St. Paul, for appellant.

Edmund C. Meisinger, Jr., West St. Paul, for respondents.

Heard, considered and decided by WOZNIAK, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

LESLIE, Judge.

Following trial of an action brought by the appellant to enforce a mechanic's lien, the district court determined that the appellant was entitled to recover the reasonable value of his services. In a post-trial motion, the respondents moved for amended findings, and the trial court granted the respondents' motion, finding that the appellant's services were performed pursuant to a written contract entered into by the parties. We affirm the trial court's amended findings.

## FACTS

In 1979 the respondents, Charles and Juanita Leach, hired the appellant, Richard Hubbs, to do the carpentry work and a small amount of concrete work on a house which they had decided to build in West St. Paul. Although the respondents acted as their own general contractor, their mortgage company required proof that they had hired a professional general contractor. Therefore, in two contracts dated June 10, 1980, executed by the appellant and the respondent, the appellant characterized his position as Vice President of H.H. & R. Development Corp., which was a general contracting company owned by one of his

friends. The parties agree that the name of the corporation and the addition of "V.P." to appellant's name were included in the contracts solely for the purpose of satisfying the mortgage company's requirements.

One contract was submitted to the mortgage company as evidence of a general contractor on the respondent's project. That contract indicated payment to be $30,000.00, and a specification sheet was submitted along with the contract listing the work to be performed, which included services in addition to the carpentry and concrete work for which the appellant had been hired.

The second contract called for payment of $18,978.00 and bears the signatures of two witnesses in addition to the signatures of the parties. At trial the respondents contended that this contract evidenced the actual intent of the parties, and that the first June 10 contract was not enforceable because it provided for additional work which was never performed and had been drawn up simply to satisfy the mortgage company. The appellant agrees that the first June 10 contract was unenforceable, but argues that the second June 10 contract was also invalid. His position at trial was that he signed two blank contracts on June 10, believing that they would both be submitted to the mortgage company. The appellant also contended that neither witness to the second contract actually witnessed the signing of the contract.

The appellant began work on July 2, 1980. It is his contention that the parties at that point had not finally agreed upon the terms and scope of his contract, and that a third contract was therefore entered into on July 18, 1980. This contract, which the appellant produced at trial, included a contract price of $28,800.00. Although respondent Charles Leach's signature appears at the bottom of this contract, the respondents contended at trial that Charles Leach never in fact signed the July 18 contract. This factual dispute is complicated by the fact that Charles Leach suffered a heart attack in August, 1980, and sus-

tained brain damage; thus he was unable to testify at trial. The respondents did, however, provide a handwriting expert who testified that the July 18 contract was not signed by Charles Leach.

Following the trial of this matter, the court issued its findings of fact, conclusions of law and order for judgment, determining that the appellant's services were worth $20,078.00, that the respondents were entitled to a setoff in the amount of $1,900.00 for defective work included in those services, and that the respondents should pay $500.00 in attorneys fees to the appellant. The respondents moved for an order amending the court's findings and conclusions, and requesting, *inter alia*, findings concerning the June 10 and July 18 contracts. Pursuant to this motion and following a hearing, the court issued its amended findings of fact, conclusions of law and order for judgment, determining that the June 10, 1980 contract for $18,978.00 evidenced the intent of the parties, that $10,000.00 had been paid, and that the respondents were entitled to a $1,900.00 setoff for defective work. The court also specifically found "[t]hat the purported contract dated July 18, 1980 was not executed by Defendant Charles Leach nor entered into by the parties."

The appellant moved to reinstate the court's original findings, although arguing that the court should have found the July 18 contract valid instead of determining the reasonable value of his services. When that motion was denied, he appealed.

### ISSUES

1. Whether the appellant is liable under the June 10 contract which he signed "Richard Hubbs, V.P."

2. Whether the trial court erroneously determined that the second June 10 contract reduced to writing the intent of the parties and that the July 18 contract was invalid.

### ANALYSIS

1. The appellant argues that "[t]he court cannot pass upon the rights of a

corporation which is not a party to the action." The district court, however, never determined the rights of the H.H.R. Development Corporation—rather, it found that Richard Hubbs should be individually bound by his signature on the second June 10 contract.

■ All parties agree that the corporation, although named in the second June 10 contract, was never intended to be a party thereto. Therefore, the issue before the trial court was whether the appellant could be liable on the second June 10 contract, even though he apparently signed as "Richard Hubbs, V.P." (It should be noted that the appellant testified at trial that he did not add the V.P.) This issue has been answered as follows:

> If an officer of a corporation executes a contract in its behalf by merely signing his name thereto with the suffix Pres., Sec., Mgr., or like word, the contract is presumptively his individual contract, but extrinsic evidence is admissible to show that the parties understood it to be the contract of the corporation.

4 *Dunnell Minn. Digest* 2d *Corporations* § 14.09 (3d ed. 1977) (footnote omitted; citations in footnote). Here the undisputed evidence indicated that the parties understood the contract not to be that of the corporation, demonstrating even more clearly the appellant's individual liability on the contract.

■ 2. The appellant claims also that the respondents misrepresented the nature of the second June 10 contract, that the July 18 contract was on its face more reasonable and probable, and that the trial court erred by finding the June 10 contract valid and by finding that the July 18 contract was never entered into by the parties. Appellate review is limited to determining whether the district court's findings of fact are clearly erroneous, with "due regard being given to the opportunity of the trial court to judge the credibility of the witnesses," *In re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 225, 243 N.W.2d 302, 305 (1976), *cert. den. sub. nom. Arms v. Watson*, 429 U.S.

1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976). "[T]he trial court's findings may be held clearly erroneous, notwithstanding evidence to support such findings, if the reviewing court is left with the definite and firm conviction that a mistake has been made." *Id.* at 225, 243 N.W.2d at 305. Where documentary evidence is disputed, the rule has been stated as follows:

> " * * * Where a trial judge sits without a jury, the rule varies with the character of the evidence: (a) If he decides a fact issue on written evidence alone, we are as able as he to determine credibility, and so we may disregard his finding. (b) Where the evidence is partly oral and the balance is written or deals with undisputed facts, then we may ignore the trial judge's finding and substitute our own, (1) if the written evidence or some undisputed fact renders the credibility of the oral testimony extremely doubtful, or (2) if the trial judge's finding must rest exclusively on the written evidence or the undisputed facts, so that his evaluation of credibility has no significance. (c) But where the evidence supporting his findings as to any fact issue is entirely oral testimony, we may disturb that finding only in the most unusual circumstances."

*Id.*, at 225–226, 243 N.W.2d at 305, *quoting Orvis v. Higgins*, 180 F.2d 537, 539 (2d Cir.1950).

■ In the present situation there is ample evidence to support the trial court's finding that the July 18 contract was never executed and that the June 10 contract represented the intentions of the parties. Specifically, there was testimony by a handwriting expert that respondent Charles Leach's signature on the July 18 contract was forged. Further, respondent Juanita Leach testified that the second June 10 contract was not signed in blank but was intended as a binding contract. Of note also is the fact that the appellant began work prior to July 18, indicating that the parties had already reached a final agreement concerning the appellant's services. The trial court had an opportunity to observe the witnesses and judge their

credibility, and we are of the view that the trial court's amended findings should not be overturned.

### DECISION

There is substantial evidence in the record supporting the trial court's conclusion that the June 10 contract was valid and that the July 18 contract was forged.

Affirmed.