**DAITZ FLYING CORPORATION v. UNITED STATES.**

No. 126, Docket 20810.

Circuit Court of Appeals, Second Circuit.
April 7, 1948.

370

See also, D.C., 4 F.R.D. 372.

John M. Keating, of Buffalo, N. Y., for appellant.

Morris K. Siegel, of New York City, for appellee.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This case comes up upon the plaintiff's appeal from the dismissal of its complaint in an action upon four contracts between itself and the United States, by which it agreed to give instruction to civilian student aviators. The case was tried to a judge, and the defendant consented that the judgment should be entered against it on the first contract; but there remained for decision the remaining three: a claim under each being set up in a separate count in the complaint. The judge dismissed the second count because the plaintiff had not performed as agreed, and the third and fourth counts, because all four contracts "dovetailed, and might well be considered as one agreement divided into four parts. A breach of the agreement at any stage of any one of the contracts seems to me to give power to the defendant to suspend or cancel the balance of the contract at that time." The facts were as follows. The first contract was to instruct students who had already had the primary and secondary courses in the civilian pilot training program, and had signified their "willingness and ability to devote" their "entire time to

this course of instruction until it is completed"; and the other three contracts assumed that the student had had the training provided for in the preceding contracts. The first two contracts together made up what was called the "Cross Country Course"; the first being for "ground instruction"; the second—for "flight instruction"—being itself divided into four "Stages"—A. B. C. D. The second two contracts made up what was called the "Instructor Course," this too being divided into two parts: the first for "flight instruction," and the second for "ground instruction."

The first two contracts were executed on July 1, 1941; and the Civil Aeronautics Administrator assigned six student flyers to take the "Cross Country Course"; who by September 2, 1941, had, not only finished the "ground instruction" of that course, but "Stages A. and B" of the "flight instruction," and all of "Stage C," except that three still needed "an extra hour or something." A short time before that day Daitz, the plaintiff's president, notified the Administrator that the three who had completed "Stage C" were ready for what was known as "flight testing," preparatory to "Stage D," and the Administrator sent two inspectors—Fluet, and Seal—to test them. Before letting Fluet test the students Daitz insisted that he must be satisfied that Fluet was competent to fly the plaintiff's plane, and together they took a trial flight on September 2nd. Daitz was not satisfied, and refused to let Fluet test the students. In his report to his superiors on September 3rd Fluet acknowledged that in flying the plane he "assumed the attitude of a student for the purpose of checking Daitz's ability and attitude as an instructor. Naturally, he found fault with all phases of my flying * * * I did not change my attitude as a student." Daitz, not being aware that Fluet was deliberately flying badly, wired the Administrator that Fluet had not flown the plane properly, and that Seal had said he had little experience with the kind of plane used; and he asked that some competent "examiner" should be sent. The Administrator replied by a telegram, ordering the plaintiff to "suspend all flight and ground training" until further notice; and on the

third he revoked Daitz's "designation" as instructor, which the contract required for the "Cross Country Course." No other person in the plaintiff's employ was ever so designated. On the fourth, however, another official of the Administrator wrote, extending the time for the completion of the second contract until September 15th. So matters stood without change until January 26, 1942, when the Administrator sent to the plaintiff copies of papers directing the students to complete their training elsewhere. That was a rescission of the contract.

■■■ The defendant first excuses this action on the ground that it was a breach of contract for Daitz to refuse to let Fluet use the plane to "flight-test" the three students who had completed "Stage C"; but that is patently untenable. The plaintiff, not only had an interest in protecting its own plane, but, quite aside from any decent regard for life and limb, it had agreed to "hold and save any student harmless from liability" for any damage he might do, and to do the same as to all governmental "officers an employees" which might result from their use of its "equipment." Fluet willingly submitted to "check out" the plane, but by his own confession he made no effort to fly it properly, and seized upon the chance merely to try out Daitz's composure, when faced with his apparent incompetence. In spite of Fluet's pitiful attempts upon the stand to put another meaning upon his report, the facts are not debatable and the finding is "clearly erroneous" that Daitz "refused without cause or justification and arbitrarily and capriciously to permit an authorized and specially competent flight examiner * * * to flight test the students." On the contrary he would have been grossly negligent, had he not demanded a substitute, and his refusal was no excuse either for suspending, or later for rescinding the contracts. It remains to consider the other excuses offered for so doing.

■■■ In the second count the plaintiff asked judgment for the hours of instruction given to the six students under "Stage C," and also damages resulting from the rescission; in the third and fourth counts it asked judgment for damages only. Recovery for the instruction given depends upon whether the plaintiff performed in accordance with the contract. The defendant invokes as evidence that it did not do so, the judge's finding which we quote in the margin.[1] We will not say that there was no evidence in the record to support so much of this finding as concerned Daitz's difficulties with his students; but we cannot discover anything to justify the conclusion that the students had not in fact been properly instructed in "Stage C." The testimony concerns only three of them in any event, and all that appears as to two of these is that after a lapse of some five months they required some "refresher" training before they were able to fly their planes again. That was no evidence that the plaintiff had not properly instructed them originally. The third had been an unpromising student, and in January or February, 1942, he proved to be unable to fly even a primary airplane, something which he should have learned before he was assigned to the plaintiff at all. His inability to do so had no bearing whatever upon his in-

[1] "9. The plaintiff did not satisfactorily perform Stage C of the Contract. The six students had to be reassigned to other flight schools for completion of the cross-country course and were not as well qualified as they should have been after completing Stage C. The caliber of the instruction given by plaintiff was inferior. Its president, Lewis R. Daitz, did not give instruction meeting the standards established by the Flight Instructor's Manual of the Civil Aeronautics Authority. In particular he lacked (a) patience; (b) ability to impart his knowledge to his students; and (c) capacity to inspire the respect and confidence of his students. The court finds that the unsatisfactory performances and insufficient qualifications of the students instructed by Lewis R. Daitz for plaintiff were due to said Daitz's temperamental and personality defects, lack of teaching technique, and intolerance of questions, unfitting him to discharge satisfactorily the duties of an instruction connected with the civilian pilot training program. The court finds that Lewis R. Daitz was a good pilot and knew the best use and method of flying instruction but that he was incapable at that time of imparting his skill to students of the civilian pilot training program."

struction in "Stage C." While it is true that the plaintiff has the burden of proving performance, we think that it made out a case, after it appeared that the only suggested deficiencies were without substance, for confessedly instruction had been given. Daitz's temperamental defects may have been an excuse for rescinding, but that is another matter: the plaintiff proved itself entitled to recover for all the hours of instruction given in "Stage C."

■ There remain the claims for damages. The defendant asserts that the contract was unilateral—"illusory"—because Article Seventh relieved the Administrator of all compulsion. We quote that article in the margin, so far as it is relevant.[2] The argument is that, since it empowered the Administrator to direct the "contractor" to "cease giving instruction to" one student, he was free to direct the plaintiff to "cease giving" it to all the students, and that this amounted to a privilege to rescind the whole contract, as he did on January 26, 1942. That is a misapprehension of the meaning of the article. The first sentence merely gave power to instructors—all of whom were to be employees of the "contractor"—if they thought that a given student would not make a good aviator to inform the "contractor," and the "contractor" would then inform the Administrator, who would suspend, or end, the instruction. So far, it gave the Administrator no initiative; and it is only the third sentence which on any theory can be used to support rescission. It is possible to read that literally so as to give the Administrator power to stop the instruction of a student, at his pleasure, or because the instruction was imperfect; but if it is read with what went before, it merely gives the Administrator the power to decide for himself that

a given student would not turn out to be a good aviator—the same power that the instructors had. It did not concern the propriety of the "contractor's" instruction in any way whatever. The Administrator did have power to rescind the contract, of course, as every promisor has, when his performance is conditional upon performance by the other party, but Article Seventh did not give it. Indeed, Form 523 gave him express power to eliminate any instructor whose work was not satisfactory; a power whose existence was at war with the notion that the contract did not bind the Administrator at all. Thus, if the rescission was justified, it was only because the plaintiff had substantially failed to perform.

■ Arquendo we will assume that, those temperamental defects of Daitz, which the judge found to exist, would have justified that remedy; and we will also assume that the transfer of the students to other instructors was an adequate manifestation of an election to rescind, though the last is somewhat doubtful. Be that as it may, the Administrator did not make use of the putative remedy from September 2nd when he suspended instruction, until January 26, 1942; and the suspension did not relieve the plaintiff of its duty to keep itself ready to resume, should the Administrator direct it to do so. The decisions more generally hold that in a bilateral contract the privilege of rescinding for a known breach of the other party, must be exercised seasonably, and that it is lost by delay.[3] Williston thinks that delay should not inevitably toll the remedy,[4] although he adds that it should do so, "where there is further performance due under the contract from the other party, which in the absence of notice he might suppose would

---

[2] "Partial completion of instruction. If at any time any instructor engaged in giving such course of instruction shall be of the opinion that the training of any student should cease, the Administrator shall be notified of that fact in writing by the Contractor. After giving such notice, further flight instruction to such student shall be discontinued until the Contractor is notified by the Administrator that such instruction shall be continued or permanently discontinued. The Administrator may direct the Contractor to cease giving instruction to any student and the Contractor shall comply with such direction."

[3] Lebanon Valley Iron & Steel Co. v. American Shipbuilding & Dock Corporation, 4 Cir., 279 F. 859, 861; Nelson v. Chicago Mill & Lumber Corporation, 8 Cir., 76 F.2d 17, 23, 100 A.L.R. 87; Elyea v. RCA Victor Co., 5 Cir., 79 F.2d 759; Jack Mann Chevrolet Co. v. Associates Investment Co., 6 Cir., 125 F.2d 778, 783.

[4] Williston on Contracts § 1469.

be accepted in spite of his prior breach." We agree; but it seems to us that there may be other occasions in which delay will have the same result. During any permissible delay the promisor has an option to retain the consideration for his own promise and perform, or to reject the consideration and relieve himself. Although by hypothesis the promisee is in default upon his counter-promise, it is not just to subject him indefinitely to variations in the value of his performance to the promisor. All that the promisor should enjoy is a fair opportunity to choose, but not a gamble upon possible changes that may be to his advantage.

█ In the case at bar the evidence is ample that by September 3rd, the Administrator was fully aware of those temperamental infirmities of Daitz, which were all that could justify rescission. Fluet had gone to the airfield only to try him out; it was for that purpose that he misbehaved in the plane, as appears from his report to the Administrator which declared that "the reports of the trainees regarding such actions and attitudes are substantiated." The defendant makes no attempt to justify a delay of nearly five months before the "Advisory Board" determined the question. The plaintiff did not assent to this delay; it protested at the very outset in its telegram of September 3rd, and it had presented a claim under the contract at some time before January 15, 1942. We hold that it is entitled under the second contract, not only to recover for instruction given, but to damages for the breach.

The same reasoning applies to the third and fourth contracts provided they ever went into effect. Although, as we have said, they had been executed on August 11, 1941, no obligation arose under them unless the Administrator assigned students to be instructed under them. There is something to be said for the view of the judge that all four contracts were considered as one, anyway; but we need not go so far; for, as between the parties, the telegram of August 5th was equivalent to an assignment of the same six students for the "Instructor Course" whom the Administrator had already assigned for the "Cross Country Course." We rely upon the following language: "It is assumed all cross country operators will be equipped to start this course in time to complete by September 30 with the same students now in training in your summer cross country." The plaintiff on receiving this telegram was free to conclude that its "operators"—instructors—were to take over "the same students" who were then in the "Cross Country Course"; and that these students were "assigned to him by the Administrator" (the language of the contracts), although the assignment proper, which was a notice to the student himself, may never have been made. The defendant argues that so to recognize the telegram, would "vary" the third and fourth contracts; but that is obviously not true. The contracts did not say when the students should be assigned. Therefore, when on January 26, 1942, the Administrator assigned these students for instruction elsewhere, he rescinded the third and fourth contracts as well as the second.

█ In view of our disposition of the cause upon the evidence, it becomes unnecessary to consider the questions raised as to the conclusiveness of the pre-trial order; or the effect of the judgment on the first count as res judicata. The judgment will be reversed and the cause remanded with instructions to enter judgment for the sums earned under "Stage C" of the second contract, and for damages on the second, third and fourth counts as stipulated; together with costs in the district court, so far as these are allowable under § 258, Title 28 U.S.C.A.; but without costs in this court.[5]

Judgment reversed.

---

[5] Conners Marine Co., Inc., v. Petterson Lighterage & Towing Corporation, 2 Cir., 152 F.2d 657.