## KUHN v. PRINCESS LIDA OF THURN & TAXIS.

### No. 7506.

Circuit Court of Appeals, Third Circuit.

April 9, 1941.

As Amended on Denial of Rehearing
May 16, 1941.

Charles H. Sachs, of Pittsburgh, Pa., for appellant.

John C. Bane, Jr., of Pittsburgh, Pa., and Norman W. Schur, of New York City, for appellee.

Before BIGGS, JONES, and GOODRICH, Circuit Judges.

JONES, Circuit Judge.

The plaintiff, an attorney, sued the defendant in the court below upon a quantum meruit for the recovery of compensation for professional services rendered by him in connection with a review by the Board of Tax Appeals of a deficiency assessment against the defendant for income taxes. The case was tried to the court without a jury.

From the findings of fact made, the learned trial judge concluded that $8,500 represented reasonable compensation for the services of the plaintiff, who also claimed reimbursement for unpaid expenses in the amount of $306.65. The expense item was not disputed. Accordingly, the court entered judgment for the plaintiff in the sum of $8,806.65, from which the defendant took the present appeal. The question involved is whether the trial court erred in the amount at which it fixed the plaintiff's compensation.

The appellee reminds us that we are not at liberty to disturb findings of fact made by the trial court unless they are unsupported by evidence or are otherwise clearly erroneous. Rule 52(a), 28 U.S.C.A. following section 723c. The reason for the rule rests in large part upon the fact that the trial judge who hears the witnesses testify and observes their demeanor upon the stand is better qualified to appraise the credibility of their testimony and to resolve the conflicts therein. So long, therefore, as a finding of fact is supported by evidence and is not clearly erroneous, it is to be accepted on appeal as verity.

The rule does not operate, however, to entrench with like finality the inferences or conclusions drawn by the trial court from its fact findings. And so, while

accepting the facts. competently found by the trial court as correct, an appellate court remains free to draw the ultimate inferences and conclusions which, in its opinion, the findings reasonably induce. Such was the law prior to the promulgation of the Rules of Civil Procedure. Brown v. United States, 3 Cir., 95 F.2d 487, 490; Dunn v. Trefry, 1 Cir., 260 F. 147, 148. The new Rules have worked no change in this regard, or with respect to the ultimate conclusions in jury-waived cases in particular. Cf. Ætna Life Insurance Co. v. Kepler, 8 Cir., 116 F.2d 1, 5. See also 3 Moore, Federal Practice, p. 3115, et seq., and notes of the Advisory Committee on Rule 52(a). The sufficiency of the evidence to sustain a trial court's conclusion or finding of an ultimate fact remains appropriate matter for an appellate court's consideration. State Farm Mutual Automobile Insurance Co. v. Bonacci et al., 8 Cir., 111 F.2d 412, 415. Where the evidentiary facts are not in conflict or dispute, the conclusions to be drawn therefrom are for the appellate court upon review of the trial court's action. Cf. United States v. South Georgia Railway Co., 5 Cir., 107 F.2d 3, and United States v. Mitchell, 8 Cir., 104 F.2d 343, 346. An incorrect conclusion by a trial court qualifies as a "clearly erroneous" finding, for the correction whereof on appeal Rule 52(a) specifically provides.

In the instant case, the trial court's conclusion as to what constituted reasonable compensation for the plaintiff's services rested upon no direct testimony of witnesses. Not only were the respective witnesses far apart in their estimates as to the value of the plaintiff's services but none of them approximated the amount arrived at by the trial judge. The plaintiff himself testified to $25,000 (the amount for which he sought recovery) as the value of his time and effort. And, of the two experts whom he produced, one testified to $25,000 and the other to $30,000. On the other hand, one of the defendant's experts fixed the value of the services at $1,500, while the other gave $2,000 as his estimate, the latter sum also covering some services contemporaneously performed by the plaintiff for the defendant's sons with respect to assessments for tax on income received by them from the same source as the defendant's.

■ It is also to be noted that one of the trial court's findings (No. 13) respecting the difficulty of the legal problem confronting the plaintiff, as defendant's counsel, rested not upon fact but upon matter of law. The relative importance of this finding is obvious. It undoubtedly influenced, in no small measure, the trial court's appraisal of the extent and value of the plaintiff's services. Consequently, if the particular finding rests upon an erroneous conception of the pertinent law, its effect was harmful. It is proper, therefore, upon appeal, for this court to say whether the legal question presented by the defendant's tax case was really as difficult as the trial court concluded it was and whether the extended services detailed by the plaintiff were justified under the circumstances. Before coming to the character and scope of the matter with which the plaintiff had to treat, it will be useful to limn the background of the plaintiff's employment by the defendant as disclosed by the trial court's findings and the admitted or undisputed facts otherwise appearing of record.

In 1933 the Commissioner of Internal Revenue assessed a deficiency tax against the defendant for the years 1913 to 1930, inclusive, in the aggregate principal sum of $52,393.42, and penalties of $13,930.22. The assessment was based upon income received by the defendant from certain alimony trusts established by her former husband, one Fitzgerald, a subject of Great Britain. The trusts, which were created by Fitzgerald on December 6, 1906, followed by one day the entry of a decree of separation, a mensa et thoro, by the High Court of Justice of Ireland in favor of the wife. In anticipation of a subsequent absolute divorce, which ensued in due course (July 26, 1907) by Act of Parliament, the income payments to the wife under the trust indenture were in discharge of the husband's present and future liability for the wife's support, the wife on her part expressly waiving all rights in her husband's property growing out of the marital relationship. The defendant remarried in November, 1911; her second husband died in January, 1918. Fitzgerald, the former husband and settlor of the alimony trusts, was living throughout the tax years in question.

Upon the defendant's receipt of notice of the assessment, she consulted Kuhn, the plaintiff, who was then connected with the tax department of the Bankers Trust Company of New York. She asked him to recommend counsel to represent her and, as a result of Kuhn's suggestion, E. C. Alvord, an attorney of Washington, D. C., was employed for that purpose. Kuhn made the arrangements for Alvord's employment and,

with the latter's acquiescence, fixed the total compensation to be paid Alvord at $1,500. Thereupon Kuhn cabled the defendant that "Alvord will take case regardless outcome for fifteen hundred paid in advance. Feels risk of losing case remote". Kuhn also sent the defendant a letter confirming the cablegram. The defendant duly paid Alvord the $1,500 in advance and, thereafter, he represented her in the tax case until the spring of 1936, at which time the relationship of attorney and client between them was dissolved. Alvord turned over to Kuhn the data which he had in his possession relating to the defendant's tax case, including a citation of the decisions which he had examined. The defendant's petition to the Board of Tax Appeals, which Alvord had prepared and filed, for a review of the Commissioner's assessment was then pending. Thereupon (May, 1936) the defendant requested the plaintiff, who at that time was privately practicing law, to handle her case before the Board. The plaintiff asked for a fee of $1,500 for his services, which the defendant refused, saying that she would pay him $500. With nothing more done looking to agreement in the matter of the compensation to be paid the plaintiff, he undertook to represent the defendant.

The case came on for hearing before a member of the Board of Tax Appeals in Pittsburgh, Pennsylvania, on October 11, 1937. The hearing occupied an hour and ten minutes on that day and a few minutes on the succeeding day. On the first day the procedure consisted in its entirety of the substitution of an amended petition, some discussion between counsel and the Board member, and the orally adduced testimony of a qualified expert as to the law of England with respect to the liability of a husband for the support of his wife following divorce and the later remarriage of the wife. The second day's appearance before the Board member embraced no more than the offer and receipt in evidence of a stipulation of facts, signed by counsel for both parties. So far as the record discloses, the case was not argued orally; and, while it was understood that briefs would be filed apparently counsel for the Commissioner deemed his case of so little merit as not to justify his filing a brief. In any event, none was filed. Princess Lida of Thurn and Taxis v. Commissioner, 37 B.T.A. 41, 43. The Board decided the case in favor of the taxpayer, correctly observing that "The question [involved] thus appears to be a repetition of a controversy long since decided, i. e., whether an amount received by a divorced woman as alimony or in lieu of alimony is taxable income."

The tax question lay within a very narrow compass. The material facts, which were relatively few and uncomplicated, were either expressly admitted or undenied. A simple statement of the question was readily possible and quite sufficient for a proper understanding of the problem. Nor did the amount in controversy or the number of years involved serve in any way to complicate the task. The decided cases, especially Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391, had settled the law that income from a trust created by a husband for the payment of alimony in discharge of his legal liability to support his divorced wife, is not taxable as income to the wife. The decision in Douglas v. Willcuts had been handed down in 1935—a year before the plaintiff undertook the defendant's case. And, prior to Douglas v. Willcuts there had been two decisions by the Board of Tax Appeals to the same effect. Appeal of Jane Coates, 1926, 3 B.T.A. 429, and Spencer v. Commissioner, 1930, 20 B.T.A. 58. Following Douglas v. Willcuts, and prior to the Board's hearing of the defendant's case, there were further decisions of like import. Helvering v. Coxey, 1936, 297 U.S. 694, 56 S.Ct. 498, 80 L.Ed. 986; Helvering v. Brooks, 2 Cir., 1936, 82 F.2d 173; Commissioner v. Hyde, 2 Cir., 1936, 82 F.2d 174; Alsop v. Commissioner, 3 Cir., 1937, 92 F.2d 148; Bush v. Commissioner, 1935, 33 B.T.A. 628; Whitaker v. Commissioner, 1935, 33 B.T.A. 865; and Leonard v. Commissioner, 1937, 36 B.T.A. 563.

The law was indeed well settled and the plaintiff's study of these decisions (no unusual burden for the practicing lawyer) should have given him little difficulty in adequately presenting the defendant's contention. Under the law of England, by which the husband's obligation to his wife was to be determined, the liability of the husband for his wife's support was unaffected by the wife's subsequent remarriage. The germane English law was neither disputed nor open to dispute; and the husband, in anticipation of the divorce, had formally assumed to discharge his liability. The pertinency of the established rule under our Revenue Acts with respect to the taxability of such income was therefore apparent. All of this the plaintiff must have recognized. He knew, as evidenced by his cablegram to the defendant several years before he entered the case, that Alvord felt the "risk of losing case remote".

And, after Kuhn became defendant's counsel, he assured her on a number of occasions that the law was clear and that the Commissioner's contention was groundless. While conceding that the decisions generally were favorable to his client's position, the plaintiff urges that doubt was injected into the rule by the decision of the Board of Tax Appeals in Blumenthal v. Commissioner, 34 B.T.A. 994, affirmed per curiam by the Circuit Court of Appeals for the Second Circuit in 91 F.2d 1009, and by the decisions in Commissioner v. Tuttle, 6 Cir., 89 F.2d 112; Rea v. Commissioner, 35 B.T.A. 1132; and Hall v. Commissioner, 36 B.T.A. 398. The defendant's case was clearly distinguishable from these cases, as the plaintiff should have readily perceived upon a reading of. the. opinions. Here, as in Douglas v. Willcuts, and unlike the cases just cited, the continued enforcement of the husband's enduring liability to the wife was the consideration for the payment of the income to the wife and, thus, was in his service and therefore taxable to him.

■ From what we have said it follows that the trial court in its thirteenth finding of fact erroneously accredited the difficulty which the plaintiff endeavored to impute to his task and that thereby the court unduly enhanced the value of the plaintiff's services.

An extent of time, said by the plaintiff to have been spent on the case, was thus allowed for without reasonable basis. As an example, the court found that the plaintiff made not less than three nor more than ten trips from New York to Washington in connection with the case. For what necessary service, it does not appear. At the time the plaintiff entered the case it was then pending before the Board of Tax Appeals on the taxpayer's petition; and no hearing was held thereon other than the one in Pittsburgh in October of 1937. If the trips to Washington were in connection with the proposed settlement which the plaintiff assumed to discuss with the Commissioner, he is in no position to charge the defendant for that upon a quantum meruit. The plaintiff, unbidden by his client, broached settlement to the Commissioner and, thereafter, advised the defendant to pay $10,000 in discharge of the asserted tax liability. This she flatly refused to do, and, as a consequence, nothing was paid. Had

she followed the plaintiff's advice, she would not only have parted with $10,000 to which the government had no legal claim, but she would have thereby impliedly admitted her liability for tax on the trust income for subsequent years, as the court below in effect found. We do not cite this in denial of the plaintiff's right to compensation, but it is of importance when we come to sift out the time for which the plaintiff may rightfully recover. As further evidence of the plaintiff's profligacy with his time, professedly in the defendant's behalf, he testified and the court found that he spent five days in Pittsburgh in connection with the Board of Tax Appeals hearing. What could possibly have necessitated his presence in Pittsburgh for such a length of time he does not explain. The only witness produced at the hearing before the Board was the New York lawyer who testified to the English law. Factually the case was simple to prepare and present. And, the plaintiff did not even conduct the hearing for his client. He associated another lawyer for that purpose. Furthermore, he was assisted by a firm of Philadelphia lawyers experienced in tax matters whom the defendant employed because of her dissatisfaction with the plaintiff's insistence upon a settlement of the case. The Philadelphia lawyers aided in the preparation of the brief. For their services, they charged $250, which the defendant paid. The brief was the real element of service to the client.

■ Counsel at all times are entitled to fair and reasonable compensation for services performed but, by the same token, the compensable services cannot be extended beyond what was reasonably required. From a reading of the record in this case, it is plain that the plaintiff throughout the trial below was at great pains to magnify the seriousness of the legal problem with which he had been concerned in the defendant's behalf and to build up an expenditure of time and effort grossly out of proportion to the reasonable requirements of the case. After careful consideration of the matter, it is our opinion that $2,500 will adequately compensate the plaintiff for his services to the defendant.

The judgment of the District Court is reversed and the case remanded for further proceedings in conformity with this opinion.