**HARDT et al. v. HELLER BROS. CO.**

No. 9508.

United States Court of Appeals
Third Circuit.

Argued Oct. 5, 1948.

Decided Nov. 19, 1948.

R. Sturgis Ingersoll, of Philadelphia, Pa. (Frederic L. Ballard, Jr., and Ballard, Spahr, Andrews & Ingersoll, all of Philadelphia, on the brief), for appellant.

Hirsh W. Stalberg, of Philadelphia, Pa. (Harry Shapiro, Edward Stone, and Sha-

piro, Conner, Rosenfeld & Stalberg, all of Philadelphia, Pa., on the brief), for appellees.

Before MARIS, McLAUGHLIN, and O'CONNELL, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This diversity case is an appeal from a judgment of the district court sitting without a jury, which awarded compensation to appellees for their services on a quantum meruit basis in and about the procuring of a Certificate of Necessity for the appellant. The lower court found the fair value of appellees' services to appellant in connection therewith to be $45,000 and that appellees were entitled to six per cent interest on the principal sum from July 3, 1941. The interest down to the date of the judgment amounted to $16,575 and brought the total of the judgment to $61,575.

The fact finding by the trial court that a contract of employment did exist between appellees and appellant, though strongly contested below, is not attacked on this appeal. The sole dispute pertains to the amount of compensation allowed.

Certificates of Necessity were part of the national wartime emergency program. They were authorized by Section 124 of the Internal Revenue Code, 54 Stat. 999, Oct. 8, 1940, P.L. 801, 76th Cong., and amendments thereto, 26 U.S.C.A. § 124, known as "The Tax Amortization Law." They were issued to qualified manufacturers. They certified that a contemplated increase in facilities was necessary in the interest of national defense and allowed an annual deduction of 20% of the cost at the election of the taxpayer. This permitted amortization of such facilities in five years, which period under the program's theory would exhaust their prospective use. The certificates were designed to provide reasonable protection against bankruptcy at the end of the effort to the manufacturer undertaking "the rapid expansion which the national defense required for an activity of uncertain duration." Report of the Under Secretary of War, Feb. 15, 1945. The certificates were issued by either the War or Navy Departments. The instant matter came under the War Department. Prior to the issuance of a certificate, the application was investigated by the Office of Production Management and the Army-Navy Munitions Board.

Near the beginning of the year 1941, the appellant, Heller Brothers Company, which had then been engaged in the manufacture of steel for many years, was desirous of expanding into war work. Arthur H. Hunter was a steel salesman for Heller Brothers. He had a contract with his employer allowing him 50% of the profits on orders secured by him. He also had control of a patented line of steel products. He was very much interested in the expansion program. Prior to any connection of appellees with the matter he, with other personnel of the appellant, had prepared an application for a Certificate of Necessity on behalf of Heller Brothers. A New York firm of engineering consultants was assisting in this. The application had not been filed with the War Department.

On or about February 10, 1941, Hunter had a conference with appellees. He claimed that this had to do with a contemplated joint expansion of Heller Brothers and a new corporation of his own. The latter was to take over his personal contracts, purchase steel from Heller Brothers, fabricate it and in turn sell it to the trade. Hunter said that he was to see to it that appellees' expenses were taken care of and that their services were to be paid for by giving them stock in his new company. Hardt said that the only agreement was that he and Hartzell were to obtain for Heller Brothers a Certificate of Necessity in the sum of $1,500,000 and a Reconstruction Finance Corporation loan in the same amount. He stated that then or later Hunter did promise them stock in the new company but that he was not impressed with the idea and that the engagement of Hartzell and himself was for Heller Brothers. At two later conferences with Arthur Heller, Treasurer of appellant, present, Hardt testified that it was mutually agreed that he and Hartzell would be suitably compensated by appellant. Immediately following the first of those two conferences appellees entered upon their duties. As to what they did the trial court in its finding Number 23 found that: "On behalf of

defendant, plaintiffs made a thorough study and examination of the plant, equipment, organization, personnel, history, finances, and a capacity of the defendant; compiled relevant data, made many trips to Newark and Washington; conferred frequently with defendant's officers and with government officials in Washington whose duty it was to pass on the application for a Certificate of Necessity; prepared and submitted requisite information to these officials in Washington; planned and directed the presentation of defendant's application."

The application above mentioned is the one which was prepared by Hunter. From the testimony it was not changed by appellees in any respect. They did file it on April 5, 1941. After examination of it, the Army and Navy Munitions Board found that it contained insufficient information, that it had not been submitted in triplicate as required and that it lacked the requisite number of appendix copies. Appellant was advised to submit further information. This was attended to under the supervision of appellees and presented to the Board on or about June 5, 1941. The certificate was issued July 3, 1941 as of June 25, 1941. Regarding this, Major Neufeld, present chief of the Army Tax Amortization Branch, a witness in the case, testified that "since the certificate was issued on the basis of that information, there is no doubt that had that information been originally with the application why the certificate would have gone through without fail."

█ Though after the Certificate of Necessity was issued, Heller Brothers Company did not carry out its intended development and only expended $114,575.23 under the certificate, we do not see that those facts mitigate against the value of appellees' services, especially since it has not been suggested that appellees were in any way responsible for appellant's later course of conduct.

As seen from the above finding of the district court, appellees did put in a large amount of time on their endeavors. They kept no records of this or of their expenses and it is impossible from the testimony to ascertain just how much of that time was given to the certificate matter. While it can be accepted that the portion so devoted was sizable, the record does not bear out their contention that it was "three or four months." It is asserted on their behalf that the time spent is perhaps one of the least important factors in fixing their compensation. Whatever may be its value in that respect, it is obvious from the trial proceedings that considerable of appellees' efforts during the critical period were in furtherance of the Reconstruction Finance loan. For example, Hardt testified that "I handled the matter of R. F. C. loan as a certified public accountant. I spent some twenty-five to thirty days actual time, full days in Washington, incurring hotel and taxicab sundry and other expenses." Recovery was denied appellees for their services relating to that loan as contrary to Sections 13-15 Title 13 of the Code of Federal Regulations. That phase of the action is not before us except as it is material in connection with appellees' activities from February to June in 1941. One inescapable conclusion from the rather confusing testimony is that if requisite care had been taken in the preparation of the application prior to its filing or later if the additional needed information had been furnished promptly, the certificate's issuance might have been appreciably hastened.

Great stress is laid by appellees upon Hardt's acquaintanceship with a top executive of the Office of Production Management by reason of which it is urged that consideration of the application was expedited. The trial court found Hardt to be a person of substantial business background and prestige. He is a certified public accountant, though he insisted that his labors in seeking the certificate were not restricted to the accountancy field. However, the record fails to disclose that Heller Brothers' application received any different treatment than was accorded thousands of similar meritorious applications. The report of the Under Secretary of War states, "speedy plant expansion and conversion were vital military necessities," and the background of the Tax Amortization Law was "to provide a law susceptible of speedy administration." Out of 31,047 applications

for Necessity Certificates in the period between the passage of the Tax Amortization Act and the transfer of the certification authority to the War Production Board, 26,775 certificates were issued covering the whole or part of the application and having a dollar value of almost five billion dollars. Only 4,272 cases were denied, withdrawn or otherwise disposed of. Despite tremendous difficulties, "Nevertheless" (as the report concludes), "we got the plants, which in turn produced the guns, tanks, and planes." Major Neufeld testified that of the five or six hundred applications which he had personally processed, about 50% would go through without any conferences or further correspondence. Twenty-five per cent of the applicants were asked for information by correspondence which they would furnish and that would be the end of it. "As to the balance, the applicant or applicant's representative would come in and discuss the case, perhaps two or three times at the most, and the case would be disposed of." According to Major Neufeld, after certain difficulties were eliminated in the beginning, the average time to get a certificate through "was about between two and a half and three months." Regarding appellant's application he said, "I have seen the record in this Heller Brothers case and what was involved in that, and during the period of time which I processed cases individually, I had at least fifteen to twenty steel company cases, and there was nothing complex about it that I can recall."

In any event, according to Hardt, it was after appellees had ascertained from the Office of Production Management "just exactly what would be required by the War Department" that they filed the application which was determined to be insufficient. Hardt himself stated on the stand that he was not asking compensation because he knew the O.P.M. executive.

■ Hardt was permitted over objection to give his opinion of the value of the services rendered by Hartzell and himself and fixed this at $125,000 including expenses.[1] While they were working to obtain the certificate appellees asked Heller Brothers for expense money, but they never did make any stated demand for compensation prior to this suit which was started almost three years after the issuance of the certificate. Hardt did testify that "we asked for our money repeatedly." Two witnesses for the defense, both of them accountants, testified regarding the value of appellees' services. The first of these, Howard H. McConnell, a senior partner of a large accountant firm who had supervised the preparation of 40 or 50 applications for Necessity Certificates, stated that a fair charge for accountants' services in relation to the preparation and filing of applications for and the procuring of Certificates of Necessity would be $50 a day for the senior doing the work and $100 a day for the supervision of a partner. His firm's services in such a matter consisted in preparing the applications for filing. He said that as a result of that preparation the applications were filed and the certificates granted. He thought that Hardt was entitled to $100 a day. Harry H. Steinmeyer, also a member of a well known and reputable firm of accountants, was the second expert defense witness on

---

[1] We think allowance of this testimony was within the discretion of the trial court. Hardt was the main plaintiff. He had performed the greater part of or at least the relatively more important part of the services and according to him the certificate was issued largely because of his aptitude for the particular work. Whether the value of the disputed services in this instance required expert testimony was largely in the discretion of the trial judge. Ridder Brothers, Inc. v. Strassburger, 154 Pa.Super. 524, 527, 36 A.2d 191. As Professor Wigmore says (Wigmore on Evidence, 3rd Ed., Vol. 3, Sec. 715, page 47):

"Where the testimony is directed not so much to a class of services as to those of a particular person in view of his individual qualities, the testimony of a person who had employed that individual might be receivable even though he had no general knowledge of such services as a class. It would be a hard rule which would prevent a plaintiff from informing the jury of his own estimate of the value of his services; and the Courts seem inclined to impose no terms as to his general familiarity with the class of services; that he has rendered them justifies listening to his opinion."

the value of appellees' services. He was familiar with reviewing and supervising the type of application in question. His experience included handling applications after they had been filed where the War Department did not particularly like the way the information had been prepared and wished more information. · He said that the final result in those cases would be that the application was perfected and a certificate issued. His firm's charge was the same in all of the cases of which he had knowledge. The charge was $100 a day for partners, $50 a day for the staff man who actually worked on the job, and, where it was necessary to put the work through the firm's Washington office, the charge was $100 a day for the services of their Washington representative, who is an attorney. Regarding appellees' services he said that "on any engagement of that kind we would accept it only on a per diem basis."

■ On its facts, the issue before us is quite like the situation in Kuhn v. Princess Lida of Thurn & Taxis, 3 Cir., 119 F.2d 704. The governing principle of that opinion as stated by Judge Jones for the court, 119 F.2d at page 706, is that, "An incorrect conclusion by a trial court qualifies as a 'clearly erroneous' finding, for the correction whereof on appeal Rule 52(a) [Federal Rules of Civil Procedure, 28 U.S.C.A.] specifically provides." This sound doctrine finds full support in the recent Supreme Court decision of United States v. United States Gypsum Co., 333 U.S. 364, at page 395, 68 S.Ct. 525, 542, where Mr. Justice Reed said:

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

And see Ball v. Paramount Pictures et al., 3 Cir., 169 F.2d 317.

Here as in the Kuhn case "not only were the witnesses far apart in their estimates as to the value of the plaintiff's services but none of them approximated the amount arrived at by the trial judge" and as in that litigation the trial court "erroneously accredited the difficulty which the plaintiff endeavored to impute to his task and

* * * thereby the court unduly enhanced the value of the plaintiff's services." Even assuming appellees gave three or four months to the obtainment of the cer-. tificate, there is nothing in the nature of the undertaking or in what they accomplished to indicate that such extended service was necessary. The need or use for appellees' many ‟trips to Washington and Newark and their many conferences with appellant's staff and officials of the War Department and Office of Production Management, is not apparent. They were offering a reputable and desirable steel manufacturing company to the government for much needed war service. Primarily what they had to do was to marshal and present the true facts fully and in the required manner so as to obtain acceptance of that plant for emergency production.

■ We do not intend to imply that appellees should not be fairly compensated. There was no statutory prohibition against a manufacturer receiving and paying for necessary assistance in the preparation and presentation of this sort of application. Appellees rendered that assistance. They completed the task for which they had been employed and the result they acheived was important to appellant at that time. They are entitled to payment for this, but "the compensable services cannot be extended beyond what was reasonably required." Kuhn v. Princess Lida of Thurn & Taxis, supra, 119 F.2d at page 708. On the entire evidence we are satisfied that the finding of the court below that the fair value of appellees' services to appellant in and about the securing of the Certificate of Necessity amounts to $45,000 is clearly erroneous. In our opinion, $15,000, which includes their expenses, is ample compensation to appellees for their services to appellant.

■ From the facts we find no justification for allowance‟ of interest on the compensation awarded. Heller Brothers did owe some unliquidated amount. It was not until the present suit that appellees fixed that sum at a stated figure which they named as $125,000. There was no initial demand by appellees of a reasonable sum and when they finally set a definite amount it was grossly excessive. Until the judg-

ment of the district court of August 29, 1947, Heller Brothers Company had forcibly contended that because of lack of contractual relationship it did not owe appellees anything. In the particular circumstances appellees were at least equally at fault for the delay in payment and the compensation they are now receiving adequately takes care of any loss they may have suffered by that delay.

This view is correct under the applicable law. We are dealing with a New Jersey contract. The performance of that contract took place in the District of Columbia by the issuance of the Certificate of Necessity. The case was tried in Pennsylvania which state offers no clear-cut decision as to what law governs the allowance of interest as part of the damages for the breach of a contract where a conflict of laws is involved. Under special circumstances, not here present, Pennsylvania has applied its own law, the law of the forum, to the problem. Wood, Bacon & Co. v. Kelson, 1856, 27 Pa. 241, would appear to uphold the restatement rule (Restatement of Conflicts of Law, Sec. 418) that the law of the place of performance of the contract governs. Ratterree v. Schonhardt, 105 Pa.Super. 321, 325, 326, 161 A. 461, would appear to uphold the law of the place where the contract is made. That case relied on Clark v. Searight, 135 Pa. 173, 19 A. 941, 20 Am.St.Rep. 868. Thus it is not clear whether New Jersey, the place where the contract was made, or the District of Columbia, the place where the contract was performed, is to be looked to in prescribing the allowance of damages. Fortunately, there is no dispute between those two jurisdictions on the point. The District of Columbia law is set out in its code, Section 8, Title 17, which reads: "8. Interest on judgments for damages.—In an action to recover damages for breach of contract the judgment shall allow interest on the amount for which it is rendered from the date of the judgment only; but nothing herein shall forbid the jury, or the court, if the trial be by the court, from including interest as an element in the damages awarded, if necessary to fully compensate the plaintiff. * * *" The decisions of New Jersey are to the same effect and "allow interest in accordance with principles of equity, in order to accomplish justice in each particular case." Agnew Co. v. Board of Education of City of Paterson, Err. & App., 83 N.J.Eq. 49, 67, 89 A. 1046, 1054; Stout v. Sutphen, 132 N.J.Eq. 583, 590, 29 A.2d 724. In re Ebert, 136 N.J.Eq. 123, 130, 40 A.2d 805.

The judgment of the district court will be modified by reducing the principal sum awarded to appellees from $45,000 to $15,000 and by striking out allowance of interest on the principal sum prior to said judgment and as so modified will be affirmed.